Opinion dissenting filed by Circuit Judge Lourie.
Reyna, Circuit Judge.
MyMail, Ltd. appeals the decision of the United States District Court for the Northern District of California granting ooVoo, LLC's and IAC Search & Media, Inc.'s motions for judgment on the pleadings. Because we determine that the district court erred by declining to resolve the parties' claim construction dispute before adjudging patent eligibility, we vacate and remand.
*1376 BACKGROUND
MyMail, Ltd. ("MyMail") is the assignee of U.S. Patent Nos. 8,275,863 ("the '863 patent") and 9,021,070 ("the '070 patent") (collectively, the "MyMail patents"). On November 18, 2016, MyMail filed suit against ooVoo, LLC ("ooVoo") in the United States District Court for the Eastern District of Texas for infringement of the MyMail patents. About a month later, MyMail asserted its patents against IAC Search & Media, Inc. ("IAC"), also in the Eastern District of Texas. ooVoo and IAC each moved to dismiss their respective actions for improper venue. After the Supreme Court's opinion in TC Heartland LLC v. Kraft Foods Group Brands LLC , --- U.S. ----, 137 S. Ct. 1514, 197 L.Ed.2d 816 (2017), all parties agreed to transfer the lawsuits to the Northern District of California. On July 12, 2017, both cases were transferred.
On October 31, 2017, ooVoo and IAC each filed identical motions for judgment on the pleadings, asserting that the MyMail patents are directed to patent-ineligible subject matter under 35 U.S.C. § 101. MyMail opposed both motions, arguing that the claimed inventions are patent eligible, as evidenced in part by a construction of the term "toolbar" rendered by the Eastern District of Texas in an earlier proceeding involving the '070 patent. MyMail encouraged the court to adopt the Eastern District of Texas's construction of "toolbar" as part of its § 101 analysis. ooVoo and IAC opposed the adoption of that construction. But the district court in this case did not construe "toolbar" or any other terms of the MyMail patent claims. Nor did the court address the parties' dispute. Instead, on March 16, 2018, the district court issued orders granting ooVoo's and IAC's motions for judgment on the pleadings, holding the MyMail patents invalid under § 101. MyMail timely appealed both orders and this court consolidated the appeals.
I. The MyMail Patents
The MyMail patents are directed to methods of modifying toolbars that are displayed on Internet-connected devices such as personal computers. MyMail asserts claims 1-5, 9-13, 16-17, 19-20, and 23 of the '863 patent and claims 1-13 and 15-22 of the '070 patent (the "MyMail patent claims"). The parties agree that claim 1 of the '863 patent and claim 1 of the '070 patent are representative of the claimed subject matter for each patent, respectively.[1] The representative claims for both patents are reproduced below.
Claim 1 of the '863 patent recites:
1. A method of modifying a toolbar, comprising the steps of:
a user Internet device displaying a toolbar comprising one or more buttons, the toolbar defined by toolbar data stored in one or more toolbar-defining databases, the toolbar data comprising a plurality of attributes, each attribute associated with a button of the toolbar, wherein for each button of the toolbar, at least one of the plurality of attributes identifying a function to be performed when the button is actuated by the user Internet device;
the user Internet device automatically sending a revision level of the one or more toolbar-defining databases to a predetermined network address;
a server at the predetermined network address determining, from the *1377 revision level, the user Internet device should receive the toolbar update data;
the user Internet device receiving toolbar update data from the Internet;
the user Internet device initiating without user interaction an operation to update the toolbar data in accordance with the toolbar update data received;
the user Internet device updating, by the operation, the toolbar data in accordance with the toolbar update data, thereby producing updated toolbar data, the updating comprising at least one of the following steps (a) and (b), each respectively comprising:
(a) writing at least one new attribute to the original toolbar data, wherein the writing at least one new attribute to the toolbar data comprises changing the one or more buttons of the toolbar by adding a button; and
(b) updating at least one attribute of the toolbar data; and
the user Internet device displaying the toolbar as defined by the updated toolbar data.
'863 patent col. 29 ll. 28-63.
Claim 1 of the '070 patent recites:
1. A method for dynamically modifying a toolbar, the method comprising:
displaying the toolbar, at a user Internet device, that includes one or more toolbar buttons, the toolbar defined by toolbar data stored in one or more toolbar-defining databases, the toolbar data comprising a plurality of toolbar button attributes associated with the one or more toolbar buttons of the toolbar, wherein at least one of the plurality of toolbar button attributes identifies a function to be performed by a specific toolbar button upon actuation of the specific toolbar button;
invoking, from the user Internet device without user intervention, communication of information associated with the one or more toolbar-defining databases to a server associated with a network address;
receiving, at the server, the information associated with the one or more toolbar-defining databases;
determining, based on the information associated with the one or more toolbar-defining databases, that the user Internet device should receive updated toolbar data;
receiving, at the user Internet device, the updated toolbar data in response to determining that the user Internet device should receive the updated toolbar data;
initiating, at the user Internet device and without user interaction, an operation to update the toolbar data in accordance with the received updated toolbar data;
updating the toolbar data at the user Internet device based on the operation and in accordance with the updated toolbar data, thereby updating the toolbar data, the updating comprising at least one member of a group comprising (a) and (b):
(a) updating the toolbar data to include at least one new attribute of the toolbar data to change the toolbar by adding a toolbar button to the toolbar; and
(b) updating the toolbar data to modify an attribute of at least one of the one or more toolbar buttons of the toolbar; and
displaying at the user Internet device the toolbar as defined by the updated toolbar data,
wherein the information associated with the toolbar data includes at least one *1378 member of a group comprising a revision level, version, time, date, user ID, account owner ID, PAP ID, IP address, session keys, billing data, name, address, account information, connection history, procedures performed by a user, group ID, e-mail address, email ID, e-mail password, residential address, and phone number.
'070 patent col. 29 l. 40-col. 30 l. 20.
II. The Northern District of California's § 101 Analysis
In concluding that the MyMail patent claims are patent ineligible under 35 U.S.C. § 101, the district court for the Northern District of California determined that the claims fail both steps of the Supreme Court's Alice test. See Alice Corp. v. CLS Bank Int'l , 573 U.S. 208, 216-18, 134 S.Ct. 2347, 189 L.Ed.2d 296 (2014). The district court performed this analysis without construing the claims or addressing the parties' claim construction dispute.
At Alice step one, the district court found that the MyMail patent claims "are directed to a process for updating toolbar software over a network without user intervention." J.A. 17. After comparing the MyMail patent claims with those already found to be directed to abstract ideas in other cases, the district court concluded that the MyMail patent claims are directed to an abstract idea because they "fall within the category of gathering and processing information" and "recite a process comprised of transmitting data, analyzing data, and generating a response to transmitted data." J.A. 17-18. The district court also concluded that the claims are directed to an abstract idea because "they relate to using communications networks to update software stored on computers." J.A. 19.
At Alice step two, the district court concluded that the claims fail to provide an inventive concept sufficient to save the claims. The district court reasoned that the claims recite generic, conventional components, such as "Internet-connected computers and servers," and that the specification confirmed that toolbars, which are the subject of the invention, were already in widespread use. J.A. 22 (citing '863 patent col. 10 ll. 8-13). The court concluded that adding or changing a button on the toolbar based on data stored in a toolbar-defining database is routine and conventional, and as a result, the MyMail patents are ineligible under § 101. MyMail appealed.
We have jurisdiction under 28 U.S.C. § 1295(a)(1).
DISCUSSION
MyMail now raises two issues on appeal: (1) whether the district court erred by failing to construe the MyMail patent claims before ruling on ooVoo's and IAC's Rule 12(c) motions; and (2) whether the district court erred by finding the MyMail patent claims patent ineligible under § 101.
We review a district court's Rule 12(c) dismissal for judgment on the pleadings under the law of the regional circuit, here the Ninth Circuit. Nat. Alternatives Int'l, Inc. v. Creative Compounds, LLC , 918 F.3d 1338, 1342 (Fed. Cir. 2019) (the Rule 12(c) analysis is "functionally identical" to the standard for deciding a Rule 12(b)(6) motion to dismiss). The Ninth Circuit reviews a court's grant of judgment on the pleadings de novo. Daewoo Elecs. Am. Inc. v. Opta Corp ., 875 F.3d 1241, 1246 (9th Cir. 2017).
When reviewing a Rule 12(c) dismissal, the Ninth Circuit accepts all material allegations in the complaint as true and construes them in the light most favorable to the non-moving party. Turner v. Cook , 362 F.3d 1219, 1225 (9th Cir. 2004). In doing so, the court may consider material that is properly submitted as part of the complaint, which includes documents not physically attached to the complaint if *1379 their authenticity is not contested and the complaint necessarily relies on them. Lee v. City of Los Angeles , 250 F.3d 668, 688-89 (9th Cir. 2001). The court may also take judicial notice of matters of public record. Id. The dismissal may be affirmed only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. Turner , 362 F.3d at 1225.
Patent eligibility under § 101 is a question of law that may involve underlying questions of fact. Interval Licensing LLC v. AOL, Inc. , 896 F.3d 1335, 1342 (Fed. Cir. 2018). We review the district court's ultimate conclusion on patent eligibility de novo. Id . Patent eligibility may be determined on a Rule 12(c) motion, but only when there are no factual allegations that, if taken as true, prevent resolving the eligibility question as a matter of law. Aatrix Software, Inc. v. Green Shades Software, Inc. , 882 F.3d 1121, 1125 (Fed. Cir. 2018).
We evaluate patent eligibility under the two-step test set forth in Alice . 573 U.S. at 216-18, 134 S.Ct. 2347. First, we consider whether a claim is directed to a patent-ineligible concept such as an abstract idea, law of nature, or natural phenomenon. Elec. Power Grp., LLC v. Alstom S.A. , 830 F.3d 1350, 1353 (Fed. Cir. 2016) (citing Alice , 573 U.S. at 216-18, 134 S.Ct. 2347 ). Second, if the claim is directed to a patent-ineligible concept, we then determine whether the claim elements, considered both individually and as an ordered combination, " 'transform the nature of the claim' into a patent-eligible application," of that concept. Id. (quoting Alice , 573 U.S. at 217, 134 S.Ct. 2347 ).
Determining patent eligibility requires a full understanding of the basic character of the claimed subject matter. Bancorp Servs., L.L.C. v. Sun Life Assurance Co. of Can. (U.S.) , 687 F.3d 1266, 1273-74 (Fed. Cir. 2012). As a result, if the parties raise a claim construction dispute at the Rule 12(c) stage, the district court must either adopt the non-moving party's constructions or resolve the dispute to whatever extent is needed to conduct the § 101 analysis. See Aatrix , 882 F.3d at 1125.
Before the district court, the parties disputed the construction of "toolbar," a claim term present in the claims of both MyMail patents. MyMail directed the district court to a construction of "toolbar" rendered in another case involving the MyMail patents, MyMail, Ltd. v. Yahoo! Inc ., No. 2:16-cv-01000 (E.D. Tex. 2017). J.A. 733, J.A. 734 n.8, J.A. 740,[2] J.A. 750-82.
In Yahoo! , the court construed "toolbar" based on "definitional" language in the specification that describes "the [t]oolbar of the present invention" as capable of being "dynamically changed or updated via a Pinger process or a MOT script." J.A. 764 (emphasis omitted) (quoting '070 patent col. 10 ll. 24-26). The Yahoo! court found that the "toolbar" recited in the claims is "not a generic toolbar," and quoted the following definition of the "Pinger process":
As defined in this application ... a Pinger process comprises an entity that acts transparently as a "services" coordinator to provide and/or administer the following: 1. Heartbeat service to help maintain network connectivity with a client. 2. Authentication services that securely authenticate client access to email, commerce, *1380 and other public and private network servers and services. 3. Update services that can perform client software, database, and maintenance services during periods of inactivity.
J.A. 764 (quoting '070 patent col. 10 ll. 16-26). Ultimately, the Yahoo! court construed "toolbar" to mean a "button bar that can be dynamically changed or updated via a Pinger process or a MOT script" (the "Yahoo! construction"). J.A. 766.
In this case, MyMail argued to the district court that the Yahoo! construction "confirms that the claims of the '070 patent are directed to a particular technological process for improving an exclusively computer-oriented device." J.A. 740. ooVoo and IAC, on the other hand, argued that the Yahoo! construction was "erroneous" and "improper." J.A. 853-55. On appeal, ooVoo and IAC maintain that the Yahoo! construction is "wrong." Appellee Br. 29.
The district court never addressed the parties' claim construction dispute. Nor did the district court construe "toolbar" or adopt MyMail's proposed construction of "toolbar" for purposes of deciding ooVoo's and IAC's Rule 12(c) motions. See Appellee Br. 39 ("[T]he district court's order on appeal sets forth no findings or conclusions regarding the precise construction of the [toolbar] term."). We note that Aatrix issued after the parties briefed ooVoo's and IAC's Rule 12(c) motions, but before the district court granted the motions. The district court did not cite Aatrix in its decision. Nevertheless, the district court's failure to address the parties' claim construction dispute is error under Aatrix . See 882 F.3d at 1125.
ooVoo and IAC contend that this error is "readily dismissed" because the Yahoo! construction of "toolbar" is "redundant of other elements that already are present in the representative claims." Appellee Br. 29. We disagree. While ooVoo and IAC contend that "the pinger's functionality is merely redundant," id. at 30, and thus "adoption of MyMail's construction would have no impact on the claims' scope and, by extension, no impact on an Alice analysis," id. at 32, we decline to construe "toolbar" and the MyMail patent claims in the first instance.
We are generally hesitant to construe patent claims in the first instance on appeal. Meyer Intellectual Props. Ltd. v. Bodum, Inc. , 690 F.3d 1354, 1368 (Fed. Cir. 2012). Our hesitancy is intended to avoid conflating de novo review with an independent analysis. See Wavetronix LLC v. EIS Elec. Integrated Sys ., 573 F.3d 1343, 1355 (Fed. Cir. 2009) (citing Nazomi Commc'ns, Inc. v. Arm Holdings, PLC , 403 F.3d 1364, 1371 (Fed. Cir. 2005) ) (noting that this court's review of claim construction without deference is not an independent analysis in the first instance). While in some circumstances an appeal may present a record sufficiently developed to enable construction, see, e.g., Meyer , 690 F.3d at 1369, we do not find such a record here. ooVoo and IAC appear to agree. Appellee Br. 39 ("The proper construction of the term 'toolbar' was not fully briefed or argued to the district court on IAC's Rule 12(c) motion, and the district court's order on appeal sets forth no findings or conclusions regarding the precise construction of the term.")
Likewise, to the extent ooVoo and IAC ask us to determine in the first instance patent eligibility of the MyMail patent claims under MyMail's proposed construction, we decline to do so. The determination of patent eligibility may involve subsidiary fact questions, including whether "the claim elements or the claimed combination are well-understood, routine, [or] conventional." Aatrix , 882 F.3d at 1128. See J.A. 13-14. It is improper for us to determine factual issues in the first instance on appeal.
*1381 3M Co. v. Avery Dennison Corp. , 673 F.3d 1372, 1378 (Fed. Cir. 2012) ("[W]e cannot resolve the parties' factual disputes on appeal.").
CONCLUSION
We have considered ooVoo's and IAC's other arguments and find them unpersuasive. We conclude that the district court erred by failing to address the parties' claim construction dispute before concluding, on a Rule 12(c) motion, that the MyMail patents are directed to patent-ineligible subject matter under § 101. We vacate and remand for further proceedings consistent with this opinion.
VACATED AND REMANDED
COSTS
No costs.

The '070 patent is a continuation of U.S. Application No. 13/573,311, which in turn is a continuation of the application that became the '863 patent. The specifications of the '070 patent and the '863 patent are thus nearly identical. We refer to the '070 patent unless otherwise noted.

The parties' Rule 12(c) memoranda are practically identical in both of the district court proceedings. Unless otherwise noted, we refer to the briefing in MyMail Ltd. v. ooVoo, LLC , No. 5:17-cv-04488 (N.D. Cal.) (ECF Nos. 101, 109, 110), at J.A. 450-72, J.A. 722-82, J.A. 844-914.